IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| MONTE A. INGRAM, | * |
| Plaintiff | * |
| v | *  Civil Action Case No. WDQ-09-1175 |
| WARDEN, et al. | * |
| Defendants | * |

***

## MEMORANDUM

Before the Court is Monte A. Ingram's (Ingram) complaint under 42 U.S.C. § 1983. Ingram, who filed this action pro se, is an inmate at the North Branch Correctional Institution. Ingram does not specify what relief he is requesting; he asks only that the court "help him." Defendants, Bobby Shearin, Warden and Douglas Gansler, Attorney General of the State of Maryland through counsel, have filed a Motion to Dismiss or, in the Alternative for Summary Judgment with verified exhibits. Ingram has filed an opposition to Respondents' dispositive motion. Inasmuch as Defendants rely on materials beyond the scope of the Complaint, their Motion shall be construed as one for summary judgment pursuant to Fed. R. Civ. P. 56. No hearing is necessary. *See* Local Rule 105.6 (D. Md. 2008). For reasons that follow, summary judgment will be entered in favor of Defendants and the case closed.

### BACKGROUND

#### A. Plaintiff's Allegations

Ingram claims that he was assaulted by Correctional Officer Ronald Bennett (Bennett) on March 14, 2009 during the 7-3 shift. Ingram alleges that Bennett and Officer Portmess told him

1

to get out of his cell for cleaning. Ingram refused. Bennett accused Ingram of "running his mouth" and wanted to conduct a shakedown. Ingram asked "for what?" Ingram states that Bennett then demanded to place him in handcuffs. Ingram complied, left his cell and sat in a chair. Bennett proceeded to "shakedown" Ingram's cell. Bennett kicked a towel out of the cell, and Ingram kicked it back. Bennett then pointed a finger at Ingram who said "don't point your finger at me." Bennett ran out of the cell, grabbed Ingram by the throat and slammed him into a railing while squeezing his throat and bending Ingram over so that his back hurt. Bennett said if Ingram talked, he would throw him down the steps. Bennett issued an infraction to Ingram for raising his voice. Bennett threatened to write another infraction for banging on the door and destroying state property. Bennett told Ingram that if he did not plead guilty to the infraction, he would inflict bodily harm to him. Complaint, pp. 1-2.

Ingram claims that he filed five Requests for Administrative Remedies (ARPs) but received no response from the Warden. Ingram also sent letters to the Chief of Security, the Assistant Warden, and to other corrections officials. Further, he claims that he wrote an informal inmate complaint alleging that Officers Bennett and Michael Vanmeter denied him food because he has a picture of Martin Luther King, Jr., in his window.

### B.  Respondents' Answer

Respondents' verified exhibits demonstrate that on March 14, 2009, at about 9:30 a.m. Ingram became disruptive during a cell search conducted by Bennett and Portmess. Bennett told Ingram that if he did not lower his voice and calm down, he would be removed from the wing until the search was completed. Ingram answered "'Fuck you bitch, I'll beat your ass' and began to rise up from his chair." Exhibit 1 p. 9, Notice of Infraction. Officer Portmess grabbed Inmate

2

Ingram's arm and Officer Bennett assisted in keeping Ingram seated.  *Id*. Ingram calmed and was escorted to a contingency cell for a cool-down period without incident. *Id*.

On March 18, 2009, Ingram pleaded guilty at an adjustment hearing to violating Rules 104 and 312, respectively, engaging in threatening language and interference or resistance the performance of duties in refusing to submit to an authorized search.  The hearing officer recommended 150 days of disciplinary segregation for violating Rule 104 and 90 days concurrent for violating Rule 312.  On April 17, 2009, Warden Shearin imposed 30 days cell restriction concurrent to the hearing officer's sanctions and reduced the disciplinary segregation to 120 days.

In support of their dispositive motion, Respondents have filed Officer Bennett's affidavit in which he attests that he did not assault Ingram on March 14, 2009.  Bennett further states that he never threatened Ingram with bodily harm or withheld food unless actions "at the time the food was delivered created a security risk that did not allow a safe transfer of the food items." Exhibit 3.  Also submitted is Officer Vanmeter's affidavit in which he states that he has "never wrongfully withheld food from Monte Ingram."  Exhibit 4.

STANDARD OF REVIEW

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure when there is no genuine issue as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law.  In *Anderson v. Liberty Lobby, Inc*., the Supreme Court of the United States explained that in considering a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  477 U.S. 242, 249 (1986).

A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248.

The facts must be viewed in a light most favorable to the nonmoving party. *See Matsushita Electric Industrial Co., LTD v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The opponent must bring forth evidence upon which a reasonable fact finder could rely *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Once the movant has established the absence of any genuine issue of material fact, the opposing party has an obligation to present some type of evidence to the court demonstrating the existence of an issue of fact." *Pension Benefit Guaranty Corp. v. Beverley*, 404 f.3d 243, 246-47 (4th Cir. 2005) (citing *Pine Ridge Coal Co., v. Local 8377, UMW*, 187 F.3d 415, 422 (4th Cir. 1999)). Where, as here, the litigant is proceeding pro se, a federal court must liberally construe his pleadings. *See Haines v. Kerner*, 404 519, 520-21 (1972).

## ANALYSIS

There is no respondeat superior liability under § 1983. Warden Bobby Shearin cannot be held liable under § 1983 on the basis of supervisory liability, where there is no allegation of official policy causing the alleged constitutional violation. *See Polk County v. Dodson,* 454 U.S. 312, 325(1981); *Monell v. Department of Social Services*, 436 U.S. 312, 325 (1981); *Vinnedge v. Gibbs*, 550 F.2d 926, 927-929 (4th Cir. 1977). Accordingly, the claims against the Warden are dismissed on this basis.

### A.   Claim of Excessive Force

The Eighth Amendment prohibits protects inmates from inhumane treatment and conditions. A claim of excessive force involves both objective and subjective elements. *See Stanley v. Hejirika*, 134 F.3d 629, 634 (4th Cir. 1998). The subjective element is analyzed as

"whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U. S. 1, 6-7 (1992). The objective element is met if the actions were harmful enough to offend contemporary standards of decency. *Id*. at 8. In making this determination, the Court must look at the need for application of force, the relationship between that need and the amount of force applied, the extent of the injury inflicted, the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials, and any efforts made to temper the severity of the response. *See Whitley v. Albers*, 475 U.S. 312, 321 (1986). While it is not necessary for a prisoner to show significant injury, *Hudson v. McMillan* 503 U.S. at 9, "absent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is *de minimis*." *Norman v. Taylor*, 25 F.3d 1259, 1263 (4th Cir. 1994); *see also Riley v. Dorton*, 115 F.3d 1159, 1167 (4TH Cir. 1996).

Courts should afford deference to prison officials, particularly where the application of force is a "good faith effort to maintain discipline." *Whitley v. Albers*, 475 U. S. at 321-22. It is equally true, however, that courts must not permit such deference to "insulate from review actions taken in bad faith for no legitimate purpose." *Id*. at 322. In this case, Respondents' verified exhibits indicate that the incident arose from Ingram's failure to follow the officers' directions, his subsequent verbal threat, and his accompanying actions to rise from his seated position. The officers then acted to keep Ingram seated and maintain discipline. Ingram does not allege that he needed medical attention after the incident; there are no records that Ingram sought medical evaluation in regard to alleged excessive force on March 14, 2009. Exhibit 2. No genuine issue of material fact presented to satisfy an excessive use of force claim; Defendants are entitled to summary judgment.

### B. Verbal Harassment

Plaintiff's allegations that Bennett threatened to throw him down stairs, issue another infraction, and inflict bodily harm are rebutted by Bennett's sworn declaration. Additionally, comments that may constitute verbal abuse or harassment by themselves do not rise to the level of an Eighth Amendment violation. *See Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir.1979), cited favorably in *Moody v. Grove*, 885 F.2d 865 (4th Cir.1989) (table) (stating that as a general rule verbal abuse of inmates by guards, without more, does not state a constitutional claim). Ingram does not allege that Bennett took any action to carry out his threat. Defendants are entitled to summary judgment as a matter of law on this claim.

### C. Administrative Remedy Process

Ingram contends that he filed five Administrative Remedy Process requests (ARP) concerning the March 14, 2009 incident, but received no response. Ingram's assertion is contradicted by the declaration of Sgt. Robert Harris, ARP coordinator. Exhibit 5. Housing Unit Manager Lt. Gregory Werner's affidavit further attests that Ingram's ARP requests and outgoing mail were neither withheld nor discarded. Exhibit 6.

To the extent Ingram might intent to raise a claim about the ARP process, he has failed to exhaust his administrative remedies.[1] Exhaustion of administrative remedies is mandatory. *See* 42 U.S.C. § 1997e (a) (stating "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner in jail, prison, or other correctional facility until such administrative remedies as available are exhausted" *see also*

---

[1] Ingram has belatedly submitted correspondence complaining about Lt. Werner. These complaints shall not be considered here. Plaintiff may raise these claims in a separate § 1983 proceeding. Plaintiff's eleventh-hour Motion to Amend the Complaint (Paper No. 24) will be denied.

*Anderson v. XYZ Correctional Health Services*, 407 F.3d 674 (4th Cir. 2005); *Woodford v. Ngo*, 548 U.S. 81, 84 (2006) ("proper exhaustion" required).

Plaintiff has failed to exhaust his administrative remedies. Other than the conclusory, self-serving claim that he filed five ARP requests,[2] there is no evidence of any submission regarding the incident. Even if the Court were to assume Ingram properly accessed the ARP process, no genuine issues of material fact are raised. Defendants are entitled to summary judgment in their favor.

## CONCLUSION

After review of the pleadings, exhibits, and applicable law in the light most favorable in Plaintiff, the Court concludes there is no genuine issue as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law. Summary judgment will be entered in favor of Defendants by separate Order.

September 1, 2009              _____/s/_____
Date                                        William D. Quarles, Jr.
                                              United States District Court

---

[2] Ingram submitted a copy of an ARP claiming that he was denied food by Bennett and Van Meter. The ARP is signed March 28, 2009. It is neither stamped by prison authorities nor contains any response. It is unclear whether the ARP was ever submitted for review. Plaintiff does not indicate how many meals were missed or specify any resulting harm. Complaint, Attachment.